1

2

3

4

5

6               **UNITED STATES DISTRICT COURT**

7                   **DISTRICT OF NEVADA**

8

9   MICHAEL ALLAN CLARK,

10          Petitioner,                    Case No. 2:11-cv-00585-KJD-PAL

11   vs.                                   **<u>ORDER</u>**

12   DWIGHT NEVEN, et al.,

13          Respondents.

14

15          Before the court are the amended petition for writ of habeas corpus (#35), petitioner's

16   motion for partial dismissal (#58), which contains the current version of ground 2, respondents'

17   answer (#73), and petitioner's reply (#77).  The court finds that petitioner is not entitled to relief,

18   and the court denies the petition.

19          After a jury trial in state district court, petitioner was convicted of two counts of sexual

20   assault with a minor under the age of 16 and one count of preventing or dissuading a witness or

21   victim from testifying and/or producing evidence; two counts of statutory sexual seduction were

22   stricken.  Ex. 28 (#37).  Petitioner appealed, and the Nevada Supreme Court affirmed.  Ex. 65 (#40).

23          Petitioner then filed a post-conviction habeas corpus petition in the state district court.  Ex.

24   71 (#41).  The state district court denied the petition.  Ex. 73 (decision at hearing) (#42); Ex. 79

25   (written order) (#42).  Petitioner appealed, and the Nevada Supreme Court affirmed.  Ex. 80 (#42).

26          Petitioner then commenced this action.  The court directed petitioner to file an amended

27   petition that was not rambling and disjointed.  The court dismissed the action when petitioner filed

28   nothing.  Petitioner appealed.  The court of appeals directed appointment of counsel.  This court

1   granted petitioner relief from the judgment, and the amended petition followed.  After litigation on

2   respondents' motion to dismiss (#46), this court dismissed ground 8 of the amended petition

3   because it did not relate back to the original petition and was untimely.  The court also noted that

4   part of ground 2 was unexhausted.  Petitioner filed a motion for partial dismissal (#58) that contains

5   a rewritten ground 2.

6          Reasonable jurists would not find the court's conclusions regarding ground 8 to be debatable

7   or wrong, and the court will not issue a certificate of appealability for ground 8.

8          Congress has limited the circumstances in which a federal court can grant relief to a

9   petitioner who is in custody pursuant to a judgment of conviction of a state court.

10         An application for a writ of habeas corpus on behalf of a person in custody pursuant to the
           judgment of a State court shall not be granted with respect to any claim that was adjudicated
11         on the merits in State court proceedings unless the adjudication of the claim—

12         (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
           clearly established Federal law, as determined by the Supreme Court of the United States; or

13         (2) resulted in a decision that was based on an unreasonable determination of the facts in
14         light of the evidence presented in the State court proceeding.

15  28 U.S.C. § 2254(d).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the

16  merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v.

17  Richter, 562 U.S. 86, 98 (2011).

18         Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown
           that the earlier state court's decision "was contrary to" federal law then clearly established in
19         the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or
           that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was
20         based on an unreasonable determination of the facts" in light of the record before the state
           court, § 2254(d)(2).
21

22  Richter, 562 U.S. at 100.  "For purposes of § 2254(d)(1), 'an unreasonable application of federal

23  law is different from an incorrect application of federal law.'"  Id. (citation omitted).  "A state

24  court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

25  jurists could disagree' on the correctness of the state court's decision."  Id. (citation omitted).

26         [E]valuating whether a rule application was unreasonable requires considering the rule's
           specificity.   The more general the rule, the more leeway courts have in reaching outcomes in
27         case-by-case determinations.

28  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

                                                    -2-

1      Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is
2  possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

3

4  Richter, 562 U.S. at 102.

5      As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in
6  justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

7

8  Id. at 103.

9      Ground 1 is a claim that the state district court denied petitioner his right to represent

10  himself.  Petitioner made two such requests.  In its order affirming the judgment of conviction on

11  direct appeal, the Nevada Supreme Court gave the relevant background and held:

12      Clark raises eight issues on appeal.  First, Clark contends that the district court erred by denying his motion for self-representation.  Specifically, he argues that his motion was
13  timely and that the district court erred by denying his motion on the basis that he did not understand the charges against him or his possible defenses.  In addition, he argues that
14  because the district court denied his motion, he was unable to cross-examine witnesses, present the defense he wanted, testify fully, call the victim's aunt as a witness, be present
15  during bench conferences, and make objections for the record.

16      Clark made two separate motions for self-representation.  The first came on the second day of trial.  This oral motion was made after jury selection but prior to opening statements.
17  Clark requested that he be allowed to make the opening and closing statements and to cross-examine the victim and the victim's mother.  He requested that his counsel cross-examine
18  the remaining witnesses.  The district court denied the motion as untimely and because Clark was requesting a hybrid form of representation.  The second motion for self-representation
19  occurred on the third day of trial.  In this written motion, Clark requested that he be allowed to conduct the entire trial.  Clark argued that counsel misrepresented facts in the opening
20  statement and was not asking all of the questions that Clark wanted asked of witnesses.  The district court conducted a canvass pursuant to Faretta v. California, 422 U.S. 806 (1975), and
21  determined that Clark did not understand the charges against him, the possible defenses, or the evidentiary rules.  The district court also found that the request was untimely.  Therefore,
22  the district court denied Clark's request.

23      A defendant has a Sixth Amendment right to conduct his own defense.  Id. at 818-19.  A district court may not deny a defendant's request to represent himself "'solely because the
24  court considers the defendant to lack reasonable legal skills or because of the inherent inconvenience often caused by pro se litigants.'"  Tanksley v. State, 113 Nev. 997, 1001, 946
25  P.2d 148, 150 (1997) (quoting Lyons v. State, 106 Nev. 438, 444 n.1, 796 P.2d 210, 217 n.1 (1990), abrogated on other grounds by Vanisi v. State, 117 Nev. 330, 22 P.3d 1164 (2001)).
26  However, a district court may deny a defendant's request where "'[1] his request is untimely, [2] the request is equivocal, [3] the request is made solely for the purpose of delay, [4] the
27  defendant abuses his right by disrupting the judicial process, or [5] the defendant is incompetent to waive his right to counsel.'"  Id. (quoting Lyons, 106 Nev. at 443-44, 796
28  P.2d at 213)).  "District courts have discretion to deny self-representation requests when they

are made in an untimely fashion." <u>Harris v. State</u>, 113 Nev. 799, 803, 942 P.2d 151, 154 (1997). In addition, this court has rejected forms of "hybrid representation," where a defendant and counsel share courtroom responsibilities. <u>See</u> <u>Wheby v. Warden</u>, 95 Nev. 567, 568-69, 598 P.2d 1152, 1153 (1979), <u>overruled on other grounds by</u> <u>Keys v. State</u>, 104 Nev. 736, 766 P.2d 270 (1988). "[A]lthough a criminal defendant may have both a right of self-representation and a right to assistance of counsel, this does not mean that a defendant is 'entitled to have his case presented in court both by himself and by counsel.'" <u>Id.</u> at 568-69, 598 P.3d 1153 (quoting <u>Miller v. State</u>, 86 Nev. 503, 506, 471 P.2d 213, 215 (1970)).

Clark's claim lacks merit. His first request for self-representation was improper as his request was for hybrid representation. As noted above, we have rejected hybrid representation, and the district court did not err in denying this request. His second request for self-representation was untimely as it was made on the third day of trial after several witnesses had testified. To the extent that the district court denied Clark's demand for self-representation based on his lack of legal knowledge, <u>Faretta</u> held that lack of legal knowledge is not an adequate ground for denial of a request for self-representation. 422 U.S. at 836; <u>see also</u> <u>Gallego v. State</u>, 117 Nev. 348, 356, 23 P.3d 227, 233 (2001) (finding that defendant can choose self-representation "even though the accused lacks the skill and experience of a lawyer"). However, the district court properly denied the request as untimely. <u>See</u> <u>Lyons</u>, 106 Nev. at 445, 796 P.2d at 214 (holding that district court has greater discretion to deny motion for self-representation when made during trial than if request had been made shortly before or on first day of trial).

Because the district court did not err by denying Clark's claim for self-representation, his claim that he was prejudiced also lacks merit. Counsel "'has the immediate—and ultimate—responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop.'" <u>Rhyne v. State</u>, 118 Nev. 1, 8, 38 P.3d 163, 167 (2002) (quoting [Wainwright] v. Sykes, 433 U.S. 72, 93 ([1977]) (Burger, C.J., concurring)[)]. Therefore, Clark's claims that he should have been able to dictate to counsel what witnesses to call, questions to ask witnesses, objections to be made, and the defense to assert were properly denied by the district court.

Ex. 65, at 1-4 (#40). The Nevada Supreme Court correctly identified petitioner's first request as one for hybrid representation. Petitioner did ask to keep counsel for cross-examination of nurses and professional witnesses. <u>See</u> Ex. 13, at 33-34 (#36). In <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 183 (1984), the Court noted that "<u>Faretta</u> does not require a trial judge to permit 'hybrid' representation" that the respondent in that case actually was allowed. Petitioner argues that that statement in <u>McCaskle</u> is a dictum, but that argument misses the point. Other courts have followed that dictum, and the Supreme Court of the United States has not clearly repudiated it. Petitioner has only proven that hybrid representation is not clearly established federal law as determined by the Supreme Court. Consequently, even if this court disagreed with the Nevada Supreme Court, it could not grant relief. <u>Carey v. Musladin</u>, 549 U.S. 70, 76-77 (2006).

Petitioner argues that the question of hybrid representation is a red herring, because the trial court rejected petitioner's motion before the issue of hybrid representation arose. Reply, at 11-12

-4-

1   (#77).  Even if the trial court was premature in the rejection of the motion, it does not mean that this

2   court must ignore everything that occurred afterward.  Petitioner's subsequent request for hybrid

3   representation simply showed that the decision was correct under Nevada law on a matter left open

4   in Federal law.

5        Petitioner argues that even though the trial court told petitioner that it would not allow

6   hybrid representation, the trial court did not give petitioner advice that he had the constitutional

7   right to represent himself alone at trial.  Reply, at 12 (#77).  The court is not persuaded.  Petitioner

8   knew that he had that right to full self-representation.  He just did not want to exercise his right to

9   self-representation in that manner.

10       Petitioner's second request, this time for actual self-representation, came on the third day of

11  the trial.  "Because the Supreme Court has not clearly established when a Faretta request is

12  untimely, other courts are free to do so as long as their standards comport with the Supreme Court's

13  holding that a request 'weeks before trial' is timely."  Marshall v. Taylor, 395 F.3d 1058, 1061 (9th

14  Cir. 2005).  Again, even if this court disagreed with the Nevada Supreme Court, it could not grant

15  relief.  Musladin, 549 U.S. at 76-77.

16       Reasonable jurists would not find these conclusions to be debatable or wrong, and the court

17  will not issue a certificate of appealability for ground 1.

18       Ground 2 is a claim that the trial court did not conduct an adequate inquiry into petitioner's

19  claims that the attorney-client relationship had broken down.  On this issue, the Nevada Supreme

20  Court held:

21       In connection with his motion for self-representation, Clark contends that the district court
         did not adequately inquire into the conflict between Clark and counsel.  Clark apparently
22       disagreed with counsel respecting what questions to ask witnesses.  In particular, he argues
         that the district court should have reviewed the questions that Clark wanted counsel to ask
23       witness Carol Hopkins.  The record reveals that the district court held extensive hearings to
         determine why Clark wanted to represent himself.  Clark was given the opportunity to
24       explain his difficulty with the way that counsel was handling his defense, and while the
         district court did not allow Clark to enter his questions into the record, Clark was able to
25       explain the substance of his questions for the record.  Moreover, the district court inquired of
         both counsel and Clark whether the relationship between the two of them had deteriorated to
26       the point that counsel could no longer adequately represent Clark.  Counsel responded that
         he could still zealously represent Clark.  And Clark stated that he believed that counsel was
27       competent to handle his case.  Accordingly, we conclude that the district court adequately
         inquired into the conflict between Clark and counsel.
28

-5-

1   Ex. 65, at 4-5 (#40).  The Sixth Amendment does not guarantee petitioner a conflict-free

2   relationship with his counsel, but it does protect him if "the conflict between [him] and his attorney

3   prevented effective assistance of counsel."  Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000)

4   (en banc) (citing Morris v. Slappy, 461 U.S. 1, 13-14 (1983)).

5          Petitioner does not argue that counsel operated under a conflict of interest, that is, that

6   counsel was representing a client with interests adverse to petitioner's interests.  The conflict

7   between petitioner and counsel concerned strategy and the questions that petitioner wanted counsel

8   to ask of witnesses.  In a similar situation, the court of appeals has held:

9          Plumlee has cited no Supreme Court case—and we are not aware of any—that stands for the
           proposition that the Sixth Amendment is violated when a defendant is represented by a
10         lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate
           because of dislike or distrust. Indeed, Morris v. Slappy is to the contrary.

11

12   Plumlee v. Masto, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc).  The list of questions that

13   petitioner wanted counsel to ask the victim's mother is frequently mentioned in this ground and in

14   the petition in general, but it never has been provided to the court.  This court cannot hold that

15   counsel was unable to represent petitioner adequately when petitioner does not give the court the

16   document that is essential for the proof of the claim.

17          Furthermore, this court's review of the trial transcript shows that the Nevada Supreme Court

18   reasonably could have concluded that the personal conflict between petitioner and his attorneys did

19   not affect the attorneys' abilities to represent petitioner adequately.[1]  On July 11, 2006, petitioner

20   was living at the house of Carol Hopkins; he slept on the couch in the living room.  The other

21   people who lived in the house were S.K., Hopkins' 14-year-old daughter, Vanita Riles, Hopkins'

22   mother who had Alzheimer's Disease, Vanita Henderson, Hopkins' sister who had suffered a stroke

23   and a heart attack five years earlier, and Peggy Morris, another sister of Hopkins who had suffered

24   multiple strokes.  The charge was that petitioner entered S.K.'s room, ostensibly to use the

25   computer, but he then committed two acts of sexual assault upon S.K.

26

27   _____

28          [1]Two attorneys represented petitioner.  The court will refer to them collectively as counsel.

1        The first prosecution witness was Carol Hopkins, the mother of the victim.  She was

2   working at a hotel on the night of July 11, 2006, when S.K., her daughter, called to ask her to come

3   home because petitioner had raped S.K.  On cross-examination, Hopkins admitted that she took 30-

4   40 minutes to extract herself from work, in which time S.K. called her 3-4 more times.  Ex. 13, at

5   77-78 (#36).  Counsel thus gave the jury the ability to infer that Hopkins did not believe S.K.'s

6   complaint.

7        It was through Hopkins that the prosecution also introduced the evidence supporting the

8   charge of witness tampering.  Petitioner had written letters asking Hopkins for permission to marry

9   S.K., which would have the benefit of petitioner being released from custody because then S.K.

10  would not testify against him.  Ex. 13, at 70 (#36).  On cross-examination, Hopkins admits that in

11  the letters petitioner asked S.K. to tell the truth and that petitioner did not admit to any sexual

12  relations with S.K.  Id. at 74-75 (#36).

13       The second prosecution witness was Vanita Henderson, S.K.'s aunt.  Henderson was in the

14  bedroom next to S.K.'s room at the time.  She heard S.K. call petitioner up to her room, heard

15  sounds of sexual intercourse, and heard S.K., she believed, express pleasure.  Ex. 13, at 90-92 (#36).

16  That was the direct testimony for the prosecution.  Cross-examination further cemented that

17  testimony.  Id. at 102 (#36).

18       The third prosecution witness was S.K.  She testified to what petitioner did to her.  On cross-

19  examination, she had to admit that her trial testimony contained important information that she had

20  not told to the police, that much of her testimony was inconsistent with her prior statements, and

21  that immediately after petitioner attacked her she did not call her mother but returned a missed call

22  from her then-boyfriend.  Ex. 13, at 131-38 (#36).

23       The remaining prosecution witnesses were all investigators.  Counsel cross-examined them

24  all.  Petitioner's DNA was found on S.K.'s skin, but not inside her.  Through cross-examination,

25  counsel elicited that it was possible, through unlikely, for petitioner's DNA to transfer onto S.K.'s

26  skin simply because they had been living in the same house.  Ex. 15, at 86 (#36).

27

28

1    The conflicts over witnesses and strategy did not affect counsel's ability to represent

2    petitioner adequately.  The Nevada Supreme Court's decision was not an unreasonable application

3    of Slappy.

4    Reasonable jurists might debate this conclusion, and the court will issue a certificate of

5    appealability for ground 2.

6    Ground 3 is a claim that the trial court denied petitioner his rights to compulsory process and

7    to present a defense when petitioner was denied the opportunity to call Peggy Morris, S.K.'s aunt, as

8    a witness for the defense.  On this issue, the Nevada Supreme Court held:

> Third, Clark contends that the district court erred by refusing to compel the victim's aunt to testify and refusing to allow Clark's investigator to read into evidence a statement written by the victim's aunt.  Specifically, Clark argues that he was entitled to compulsory process and that the district court should have held a hearing to determine whether the victim's aunt was medically unable or incompetent to testify.  He also argues that the statement prepared by the aunt should have been read into evidence because the statement was reliable as the aunt had no reason to lie to help her niece's alleged rapist.

> Clark subpoenaed the victim's aunt to testify on his behalf.  On the day before she was scheduled to testify, the victim's mother presented a note from a doctor stating that the aunt should not be compelled to testify because it would be harmful to her health and because, as the result of several strokes, her mental competency was questionable.  After trial that day, Clark's investigator interviewed the aunt.  She wrote out a statement for the investigator indicating that two years ago she had stated to Clark that "[the victim] makes up things about people; about everybody, makes up stories about everybody."  At trial the next day, Clark expressed his desire that the aunt should testify or, in the alternative, that her statement be read to the jury.  Counsel told the district court that he no longer wished to pursue having the aunt testify because he determined that the doctor's assessment of the aunt was correct, the aunt was difficult to understand, and she was not mentally competent to testify.  Moreover, two years ago Clark was in prison when the alleged communication took place, calling into question the aunt's credibility respecting her statement to Clark.  In addition to finding that the witness was not reliable or competent to testify, the district court ruled that the evidence was improper character evidence and hearsay. . . .

> We conclude that the district court did not abuse its discretion in denying Clark's request to compel the aunt to testify.  The district court reviewed the doctor's note provided by the victim's mother and counsel conceded that the physical and mental condition of the aunt was questionable.  Moreover, counsel determined that he would not pursue calling the aunt as a witness because her credibility was questionable; this decision was counsel's responsibility. . . .  Therefore, we conclude that the district court did not err in this regard.

> Further, the district court did not abuse its discretion by denying Clark's request to read the aunt's statement to the jury.  The statement was not made under circumstances that assured the accuracy of the statement given the aunt's physical and mental condition at the time she wrote it.  Therefore, the written statement was inadmissible hearsay, and the district court did not err in refusing to admit it.

1   Ex. 65, at 7-8 (#40) (citation omitted).  Counsel's ultimate decision not to call Morris as a witness

2   made the confrontation-clause claim moot.  Petitioner's argument that the right of confrontation is a

3   personal right misses the point that it is counsel who decides what witnesses to call.  Otherwise, the

4   relationship would descend into the hybrid representation that <u>Faretta</u> does not require.

5        Petitioner does not persuade the court that the use of the hearsay rule in this case violated his

6   right to a fundamentally fair trial.  Petitioner cites <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973).

7   Chambers was accused of killing a police officer.  Another person, Gable McDonald, gave a sworn

8   confession to Chambers' attorney that he was the actual shooter, but then McDonald recanted that

9   confession at the preliminary hearing.  Chambers tried to have witnesses testify to McDonald's

10  confession, but the trial court refused Chambers' request because Mississippi law did not have an

11  exception to the hearsay rule for statements against penal interest.  Chambers called McDonald as a

12  witness, McDonald again repudiated his confession, and the trial court refused Chambers' request to

13  treat McDonald as an adverse witness because Mississippi's voucher rule did not allow Chambers to

14  impeach his own witness.  <u>Id.</u> at 287-96.  The Court found that the operation of these two rules

15  deprived Chambers of a fundamentally fair trial, holding:

16       Although perhaps no rule of evidence has been more respected or more frequently applied in
         jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the
17       introduction of evidence which in fact is likely to be trustworthy have long existed.  The
         testimony rejected by the trial court here bore persuasive assurances of trustworthiness and
18       thus was well within the basic rationale of the exception for declarations against interest.
         That testimony also was critical to Chambers' defense.  In these circumstances, where
19       constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay
         rule may not be applied mechanistically to defeat the ends of justice.
20

21  <u>Id.</u> at 302.  However, the Court also made clear that it was not establishing any new constitutional

22  rule regarding the admissibility of evidence; the particular facts of Chambers' case meant that the

23  application of state law on admissibility of evidence deprived him of a fair trial.  <u>Id.</u>

24       The trial court's refusal to allow into evidence Morris' statement was not the mechanistic

25  application of a rule to exclude trustworthy evidence.  First, the court had both the note from

26  Morris' doctor and counsel's relation of his investigator's perception of Morris that she was not

27  competent to testify.  Second, the statement proves itself to be untrustworthy.  Morris wrote on

28  December 6, 2006, "I told Michael two years to keep away from [S.K.], she would make up stories

-9-

1   on everybody."  In 2004, petitioner was in prison on a federal judgment of conviction, not living

2   with S.K. or Morris.  Morris had no reason or ability to speak with petitioner in 2004 about S.K.

3   Third, Morris' statement did not refer to any specific events, let alone the events of July 11, 2006.  It

4   was just a general statement that S.K. lied about people.  Evidence of the reputation of a person for

5   telling lies is inadmissible.  Nev. Rev. Stat. § 50.085(2).  The jury, if they chose to disbelieve S.K.,

6   had much more concrete evidence that she made up stories, because counsel's cross-examination of

7   her revealed many inconsistencies with her prior statements.  Under these circumstances, the

8   Nevada Supreme Court reasonably could have concluded that <u>Chambers</u> did not require admission

9   of <u>Morris</u>' statement into evidence.

10      Reasonable jurists might debate this conclusion, and the court will issue a certificate of

11   appealability for ground 3.

12      Ground 4 is a claim that the trial court erred in not allowing petitioner himself to use his last

13   peremptory challenge to remove a prospective juror, later known as Juror 9, because that person said

14   that he would need to hear petitioner's testimony.  On this issue, the Nevada Supreme Court held:

15      Second, Clark argues that the district court erred by not allowing Clark to use his final
16      peremptory challenge to dismiss juror nine over counsel's strategic decision not to
        peremptorily challenge that juror.  Specifically, Clark contends that juror nine was biased
17      because he stated that if he were Clark, he would not want him on the jury if Clark did not
        testify.  Therefore, Clark argues that he was compelled to testify against his wishes because
18      of the bias stated by juror nine.

19      Clark failed to include a transcript of the jury selection proceeding.  The burden is on the
        appellant to provide an adequate record enabling this court to review assignments of error.
20      <u>Thomas v. State</u>, 120 Nev. 37, 43 n.4, 83 P.3d 818, 822 n.4 (2004); <u>see also Greene v. State</u>,
        96 Nev. 555, 558, 612 P.2d 686, 688 (1980); <u>Jacobs v. State</u>, 91 Nev. 155, 158, 532 P.2d
21      1034, 1036 (1975).  However, the district court stated at trial that juror nine had been
        properly rehabilitated.  In particular, the district court noted that juror nine stated that he
22      understood the law that a defendant does not have to testify and that it cannot be used
        against him.  Juror nine also stated that he could apply the law in this case.  Therefore, the
23      district court left juror nine on the jury panel.  Counsel stated that he did not use the last
        peremptory challenge on this juror because the next potential juror had a child who had been
24      a victim of sexual assault.  Counsel stated that he could not be sure that the district court
        would remove this juror for cause and did not want her empaneled on the jury.  "[W]ith few
25      exceptions, the means of representation, <u>i.e.</u>, trial tactics, remain within counsel's control."
        <u>Rhyne</u>, 118 Nev. at 8, 38 P.3d at 168 (Defendant has control over certain fundamental
26      objectives, such as whether to employ defense of not guilty by reason of insanity).
        Accordingly, whether to use a peremptory challenge is counsel's decision, and the district
27      court did not err in denying Clark's request to use his last peremptory challenge.

28

1   Ex. 65, at 5-6 (#40).  This decision presents the question of what this court may consider.  When

2   reviewing a state-court determination for reasonableness under 28 U.S.C. § 2254(d), this court's

3   review is limited to the record that was before the Nevada Supreme Court when it made its

4   determination.  <u>Cullen v. Pinholster</u>, 563 U.S. 170 (2011).  The transcript of the jury selection is

5   Exhibit 9.  The other transcripts of the trial, which became Exhibits 10, 13, 15, and 17, were filed

6   with the Nevada Supreme Court.  The transcript of the jury selection was ordered on a later date.  It

7   was filed with the district court, but it was not filed in the Nevada Supreme Court.  It was not

8   included in the appendix on appeal.  It was petitioner's responsibility to provide the relevant

9   transcript to the Nevada Supreme Court, and he did not.  His opening brief cited to a document that

10  the Nevada Supreme Court did not possess.  <u>See</u> Ex. 62, at 42.  Consequently, this court may not

11  consider Exhibit 9 when reviewing the Nevada Supreme Court's decision.

12      The Nevada Supreme Court's description of the district court's statements at a subsequent

13  point in the trial is accurate.  Not having anything else to use, it was a reasonable application of the

14  rule that a defendant has a right to an impartial jury.

15      Reasonable jurists might debate this conclusion, and the court will issue a certificate of

16  appealability for ground 4.

17      Ground 5 is a claim that the trial court erred when it excluded petitioner from the bench

18  conference where the prosecution and the defense exercised their peremptory challenges.  On this

19  issue, the Nevada Supreme Court held:

20      In a related claim, Clark argues that the district court should have allowed him to be present
        at a bench conference regarding juror nine.  In support of this contention, Clark cites to
21      <u>Snyder v. Massachusetts</u>, 291 U.S. 97 (1934), for the proposition that a defendant has the
        right to be present during the "summoning (sic) up of counsel." <u>Id.</u> at 106, 109.  Clark
22      misquotes this case, as <u>Snyder</u> actually states that a defendant has the right to be present
        during the "summing up of counsel."  That is, a defendant has a right to be present during
23      opening and closing arguments.  Therefore, the district court did not err in denying Clark's
        request to be present at the bench conference.
24

25  Ex. 65, at 6 (#40-15).  The court of appeals has held that a defendant has no constitutional right to

26  participate personally in peremptory challenges.  <u>United States v. Boyd</u>, 86 F.3d 719, 722-23 (9th

27  Cir. 1996).  For the purposes of 28 U.S.C. § 2254(d)(1), <u>Boyd</u> is not directly controlling precedent

28  for the Nevada Supreme Court, but <u>Boyd</u> does mean that the Supreme Court of the United States has

1    not clearly established federal law to the contrary.  This court cannot grant relief on ground 5.

2    Musladin, 549 U.S. at 76-77.

3           Reasonable jurists would not find these conclusions to be debatable or wrong, and the court

4    will not issue a certificate of appealability for ground 5.

5           Ground 6 is a claim that insufficient evidence existed to support the guilty verdicts on sexual

6    assault.  On this issue, the Nevada Supreme Court held:

7           Fourth, Clark argues that there was insufficient evidence to convict him of sexual assault of
            a minor under age of 16.  Specifically, he contends that the victim's behavior after the
8           incident was inconsistent with that of a sexual assault victim, circumstantial evidence and
            DNA evidence were lacking, and there were several inconsistencies between the victim's
9           testimony and other witnesses' accounts.

10          Our review of the record reveals sufficient evidence to establish guilt beyond a reasonable
            doubt as determined by a rational trier of fact.  See Wilkins v. State, 96 Nev. 367, 374, 609
11          P.2d 309, 313 (1980); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979); Origel-
            Candido v. State, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998).  We have repeatedly held
12          that the uncorroborated testimony of a victim is sufficient to uphold a conviction for sexual
            assault.  Gaxiola v. State, 121 Nev. 1473, 1481, 930 P.2d 701, 706 (1996); Washington v.
13          State, 112 Nev. 1067, 1073, 922 P.2d 547, 551 (1996).  The victim testified that Clark
            pushed her down on the bed and held her down while he assaulted her.  Clark's DNA was
14          found on her neck or shoulder where the victim alleged that Clark kissed her.  No DNA was
            found in the victim's vagina, but the DNA expert testified that the lab only tests for DNA if
15          it finds sperm and no sperm was found.  In addition, although the victim's aunt testified that
            she may have heard the victim moan "oh baby," the State presented evidence that it may
16          have been Clark who made this statement or that the aunt may have been mistaken about
            what she hear.  Counsel vigorously cross-examined the victim regarding these
17          inconsistencies and highlighted them during closing argument.  "[W]here there is conflicting
            testimony presented at a criminal trial, it is within the province of the jury to determine the
18          weight and credibility of the testimony."  Deeds v. State, 97 Nev. 216, 217, 626 P.2d 271,
            272 (1981).  While the evidence presented was not overwhelming, the State presented
19          sufficient evidence that Clark was guilty of sexual assault.

20   Ex. 65, at 8-10 (#40-15).  The issue for the jury came down to whom to believe.  The jury believed

21   the victim, and her testimony was sufficient for a finding that petitioner was guilty of sexual assault.

22   The Nevada Supreme Court reasonably applied Jackson.

23          Reasonable jurists might debate this conclusion, and the court will issue a certificate of

24   appealability for ground 6.

25          Ground 7 contains five claims of ineffective assistance of counsel.  A petitioner claiming

26   ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation

27   "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688

28   (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is

                                                -12-

1   a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

2   would have been different," id. at 694.  "[T]here is no reason for a court deciding an ineffective

3   assistance claim to approach the inquiry in the same order or even to address both components of

4   the inquiry if the defendant makes an insufficient showing on one."  Id. at 697.

5       Strickland expressly declines to articulate specific guidelines for attorney performance

6   beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the

7   duty to advocate the defendant's cause, and the duty to communicate with the client over the course

8   of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's duties so

9   exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . .  Any

10  such set of rules would interfere with the constitutionally protected independence of counsel and

11  restrict the wide latitude counsel must have in making tactical decisions."  Id. at 688-89.

12      Review of an attorney's performance must be "highly deferential," and must adopt counsel's

13  perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."

14  Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's

15  conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

16  overcome the presumption that, under the circumstances, the challenged action 'might be considered

17  sound trial strategy.'"  Id. (citation omitted).

18      The Sixth Amendment does not guarantee effective counsel per se, but rather a fair

19  proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.

20  Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell

21  below an objective standard of reasonableness alone is insufficient to warrant a finding of

22  ineffective assistance.  The petitioner must also show that the attorney's sub-par performance

23  prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,

24  but for the attorney's challenged conduct, the result of the proceeding in question would have been

25  different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence

26  in the outcome."  Id.

27          Establishing that a state court's application of Strickland was unreasonable under § 2254(d)
            is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly
28          deferential," . . . and when the two apply in tandem, review is "doubly" so . . . .  The

                                            -13-

1  Strickland standard is a general one, so the range of reasonable applications is substantial.
   Federal habeas courts must guard against the danger of equating unreasonableness under
2  Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is
   not whether counsel's actions were reasonable. The question is whether there is any
3  reasonable argument that counsel satisfied Strickland's deferential standard.

4  Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citations omitted).

5       In ground 7(A), petitioner argues that counsel was ineffective because counsel did not use

6  the final peremptory challenge on Juror 9, as described above in ground 4.  The Nevada Supreme

7  Court held:

8       Sixth, appellant claimed his trial counsel was ineffective for failing to use a peremptory
        challenge on a biased juror because appellant asserts he was compelled to testify due to that
9       juror's bias.  Appellant failed to demonstrate that counsel's performance was deficient or
        that he was prejudiced.  Counsel stated that he made a tactical decision to use the
10      peremptory challenge on a different juror because that juror had a family member who had
        been the victim of sexual abuse.  "Tactical decisions [of counsel] are virtually
11      unchallengeable absent extraordinary circumstances," and appellant failed to demonstrate
        this decision constituted an extraordinary circumstance.  Ford v. State, 105 Nev. 850, 853,
12      784 P.2d 951, 953 (1989).  In addition, appellant cannot demonstrate prejudice because the
        underlying claim regarding juror bias was raised on direct appeal and was rejected by this
13      court.  Clark v. State, Docket No. 48647 (Order of Affirmance, January 30, 2009).
        Therefore, the district court did not err in denying this claim.
14

15 Ex. 80, at 3-4 (#42).[2]  The quoted passage has one factual error.  Counsel actually did not use a

16 peremptory challenge on a juror who had a family member that was a victim of sexual abuse.

17 Instead, counsel decided not to use his last remaining peremptory challenge on Juror 9 because Juror

18 9's replacement would have been the person who had a family member that was a victim of sexual

19 abuse.  Counsel did not want that person on the jury.  If that person was seated, and if counsel could

20 not convince the court to excuse that person for cause, then counsel would have been stuck with that

21 person being on the jury because no peremptory challenges would have remained to him.

22 Nonetheless, this error would not have changed the Nevada Supreme Court's analysis of what was a

23 tactical decision by counsel, and this court cannot say that the Nevada Supreme Court's analysis was

24 an unreasonable application of Strickland.

25

26

27

28 _____
   [2]The Nevada Supreme Court did have the transcript of the jury selection in its record for the
   appeal from the denial of the state habeas corpus petition.

-14-

1    Reasonable jurists might debate this conclusion, and the court will issue a certificate of

2    appealability for ground 7(A).

3    Ground 7(B) is a claim that appellate counsel failed to raise on direct appeal the issue of the

4    bias of Juror 9.  On this issue, the Nevada Supreme Court held:

5         First, appellant claimed that appellate counsel was ineffective for failing to include a
          transcript of jury selection in the appendices on direct appeal in order to allow this court to

6         properly review his claim concerning juror bias.  Appellant failed to demonstrate prejudice
          because our review of the transcript reveals that the district court did not err in determining

7         that the juror was unbiased as the juror stated that he understood that a defendant did not
          have to testify and stated that he could apply the law. . . .  Therefore, the district court did not

8         err in denying this claim

9    Ex. 80, at 4 (#42) (citation omitted).  On direct appeal, the argument was:

10        Trial court could have eliminated the compulsion [to testify] by dismissing juror number
          nine who admitted bias if Mr. Clark chose not to testify.  (Jury Selection, pp. 146-149).  If

11        trial court had impaneled an alternate juror only then would the motion for mistrial have
          been properly denied.

12

13   Ex. 62, at 42 (#40).  However, a few pages further on in the opening brief on appeal were the

14   relevant facts and legal theory.  Petitioner quoted parts of the trial transcript where petitioner, his

15   counsel, and the court were discussing this juror.  Ex. 62, at 48-50 (#40).  This part of the appellate

16   brief, titled "Appellant's Edited Arguments," is jumbled.  Petitioner convinced appellate counsel to

17   present the claims that petitioner wanted presented, in the order that petitioner wanted presented,

18   and appellate counsel merely edited them lightly.  Ex. 62, at 12 (#40).  Nonetheless, the Nevada

19   Supreme Court pieced together these separate threads of an argument to determine what petitioner

20   actually was claiming on direct appeal and ruled upon that claim.  Ex. 65, at 5-6 (#40).  This court

21   discussed the claim of bias in ground 4.  Then, when the Nevada Supreme Court finally had the

22   transcript of the jury selection before it, its earlier assumptions of what occurred in jury selection

23   were confirmed.  The court and the prosecutor explained to the juror that petitioner did not need to

24   testify, that the defense counsel can bring out many facts in cross-examination to give petitioner's

25   side of the story, and the juror accepted that.[3]  Perhaps the trial judge might have ruled differently on

26

27   _____

28        [3]The court has noted in its discussions of other grounds that counsel's cross-examination of
     S.K., her mother, and her aunt Vanita did elicit facts that were favorable to the defense.

1   the challenge for cause, but there was no reason for the Nevada Supreme Court to overturn the

2   ruling that the trial court did make.  Now, in federal court, petitioner has not explained what else

3   appellate counsel could have done that would have created a reasonable probability that the result on

4   appeal would have been different.  The Nevada Supreme Court reasonably applied Strickland.

5         Reasonable jurists might debate this conclusion, and the court will issue a certificate of

6   appealability for ground 7(B).

7         Ground 7(C) is a claim that counsel failed to take the steps necessary to ensure that Peggy

8   Morris, S.K.'s aunt, testified.  Ground 3 is the underlying claim.  On this issue, the Nevada Supreme

9   Court held:

> Third, appellant claimed that his trial counsel was ineffective for failing to seek an expert
> who would have examined the victim's aunt to see if she was actually unable to testify due
> to physical and mental issues.  Appellant failed to demonstrate that counsel's performance
> was deficient or that he was prejudiced.  The district court was informed by the aunt's doctor
> that, due to multiple strokes, the aunt was unable to testify at trial.  In addition, counsel
> informed the district court that his investigator stated that the aunt would not have provided
> helpful testimony due to her condition.  Appellant failed to demonstrate a reasonable
> probability of a different outcome had there been further examination of the aunt.  Therefore,
> the district court did not err in denying this claim

Ex. 80, at 2-3 (#42-8).  The court already has explained in its discussion of ground 3 how Morris'

statement would have been inadmissible.  Her testimony would have been improper character

evidence for S.K.'s reputation for untruthfulness.  Nev. Rev. Stat. § 50.085(2).  Furthermore,

petitioner has not shown why counsel should not have relied upon his investigator's impression that

Morris would not be a good witness.  The court already has explained how she would have had no

reason or ability to speak with petitioner at the time when she said that she spoke with petitioner.

The decision whether to call a witness is a tactical matter for which counsel has great discretion.

Furthermore, the decision of the Nevada Supreme Court is due deference unless it is an

unreasonable determination of the facts or an unreasonable application of clearly established federal

law.  This court cannot say that the Nevada Supreme Court's decision was an unreasonable

application of Strickland in this situation.

         Reasonable jurists might debate this conclusion, and the court will issue a certificate of

appealability for ground 7(C).

-16-

1    Ground 7(D) is a claim that counsel failed to assist petitioner in fully effectuating his right to

2    testify.  On this issue, the Nevada Supreme Court held:

3    Fourth, appellant claimed that trial counsel was ineffective during appellant's testimony.
     Appellant failed to demonstrate that counsel's performance was deficient or that he was
4    prejudiced.  The questions that appellant indicated he wanted to ask counsel to ask him
     related to statements made by the victim's aunt [Peggy Morris, described above], but those
5    statements were inadmissible because the district court determined that those statements
     were hearsay.  NRS 51.065.  Therefore, the district court did not err in denying this claim.
6

7    Ex. 80, at 3 (#42-8).  Other than the questions that would have led to inadmissible hearsay,

8    petitioner has not alleged in the petition what questions he wanted counsel to ask him.

9    Consequently, he has not demonstrated that counsel performed deficiently.  The Nevada Supreme

10   Court reasonably applied Strickland when it denied this claim.

11   Furthermore, the court agrees with respondents' arguments at 35-37 of the answer (#73).

12   Counsel and the judge urged petitioner not to testify.  Ex. 17, at 6-7, 10-12 (#37).  Even if they did

13   not know ahead of time the specifics of petitioner's testimony, they had observed him long enough

14   to know that he would have given rambling answers that would lead to the jury hearing very

15   unfavorable information.  That is exactly what happened.  Petitioner would not confine his answers

16   to the questions that counsel asked of him, even after counsel and the judge asked him simply to

17   answer the questions.  He gave the jury very incriminating information, apparently while thinking

18   that he was helping himself.

19   Reasonable jurists would not find this conclusion debatable, and the court will not issue a

20   certificate of appealability for ground 7(D).

21   Ground 7(E) is a claim that counsel failed to fully cross-examine Carol Hopkins, S.K.'s

22   mother.  The Nevada Supreme Court ruled upon this claim in the context of petitioner's argument

23   for self-representation:

24   Because the district court did not err by denying Clark's claim for self-representation, his
     claim that he was prejudiced also lacks merit.  Counsel "'has the immediate—and
25   ultimate—responsibility of deciding if and when to object, which witnesses, if any, to call,
     and what defenses to develop.'"  Rhyne v. State, 118 Nev. 1, 8, 38 P.3d 163, 167 (2002)
26   (quoting [Wainwright] v. Sykes, 433 U.S. 72, 93 ([1977]) (Burger, C.J., concurring)[)].
     Therefore, Clark's claims that he should have been able to dictate to counsel what witnesses
27   to call, questions to ask witnesses, objections to be made, and the defense to assert were
     properly denied by the district court.
28

1   Ex. 65, at 1-4 (#40).  In this court, petitioner has failed to demonstrate deficient performance or

2   prejudice, because he has not included the questions that he wanted counsel to ask.  Consequently,

3   the court cannot rule that the Nevada Supreme Court's determination was contrary to, or an

4   unreasonable application of, clearly established federal law.  Ground 7(E) is without merit.

5       Reasonable jurists would not find this conclusion debatable, and the court will not issue a

6   certificate of appealability for ground 7(E).

7       Ground 9 is a claim of cumulative error.  On direct appeal, the Nevada Supreme Court held:

8       Finally, Clark asserts that the cumulative effect of the claimed errors denied him a fair trial,
        requiring reversal.  "If the cumulative effect of errors committed at trial denies the appellant
9       his right to a fair trial, this court will reverse the conviction."  Homick v. State, 112 Nev.
        304, 316, 913 P.2d 1280, 1288 (1996).  We conclude that any error, considered individually
10      or cumulatively, does not warrant relief.

11  Ex. 65, at 12 (#40-15).  In the appeal from the denial of the state habeas corpus petition, the Nevada

12  Supreme Court held:

13      Sixth, appellant claimed that appellate counsel was ineffective for failing to support the
        cumulative error argument with all of the errors that occurred during the trial.  Appellant
14      failed to demonstrate prejudice for any of the previous claims, and therefore, failed to
        demonstrate a reasonable likelihood of success had appellate counsel raised further
15      arguments concerning cumulative error.  Therefore, the district court did not err in denying
        this claim.
16

17  Ex. 80, at 6 (#42-8).  Having found no errors, it was reasonable for the Nevada Supreme Court to

18  conclude that a claim of cumulative error did not warrant relief.  Ground 9 is without merit.

19      Reasonable jurists might debate this conclusion, and the court will issue a certificate of

20  appealability for ground 9.

21      IT IS THEREFORE ORDERED that the amended petition for writ of habeas corpus (#35) is

22  **DENIED**.  The clerk of the court shall enter judgment accordingly and close this action.

23      IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** regarding the

24  court's decisions on grounds 2, 3, 4, 6, 7(A), 7(B), 7(C), and 9 of the amended petition (#35).

25      DATED:    March 21, 2016

26

27                                      _____

28                                      KENT J. DAWSON
                                        United States District Judge

-18-